Clerk's Office
Filed Date: 3/30/23

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

DOMINICK CAPUANO,

                         Plaintiff,

        v.

ANDREW SAUL,

                         Defendant.

**MEMORANDUM & ORDER**
20-CV-03468 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Dominick Capuano filed the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying his claim for Social Security disability insurance benefits ("DIB") under the Social Security Act (the "SSA"). (Compl., Docket Entry No. 1.) Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, claiming that the decision of Administrative Law Judge Jack Russak (the "ALJ") is not supported by substantial evidence and does not correctly apply the relevant legal standards and should therefore be remanded. (Pl.'s Mot. for J. on Pleadings, Docket Entry No. 16; Pl.'s Mem. of Law in Supp. of Mot. for J. on the Pleadings, ("Pl.'s Mem."), Docket Entry No. 17.) The Commissioner cross-moves for judgment on the pleadings arguing that the ALJ's decision is supported by substantial evidence. (Comm'r's Notice of Cross-Mot. for J. on Pleadings, Docket Entry No. 18; Comm'r's Mem. of Law in Supp. of Cross-Mot. for J. on the Pleadings ("Comm'r Mem."), Docket Entry No. 19.)

      For the reasons set forth below, the Court denies the Commissioner's motion for judgment on the pleadings and grants Plaintiff's cross-motion for judgment on the pleadings.

## I.    Background

Plaintiff is a fifty-one-year-old man and a retired narcotics Lieutenant for the New York City Police Department.  (Certified Admin. R. ("R.") 37, 40, 48, Docket Entry No. 11.)  While working as a narcotics Lieutenant, Plaintiff injured his right shoulder and hip while arresting a perpetrator and stopped working in 2015.  (R. 49, 374–78.)  Plaintiff applied for DIB on December 2, 2016, with an alleged disability onset date of April 14, 2016.  (R. 10.)  Plaintiff's application was denied on March 20, 2017, (R. 62–72), and he timely requested a hearing before an ALJ.  (R. 87–88.)  The ALJ conducted a hearing on March 26, 2019.  (R. 34.)  On June 7, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the SSA.  (R. 7–22.)  Plaintiff appealed the ALJ's decision to the Appeals Council and, on June 9, 2020, the Appeals Council denied review.  (R. 1–6.)

### a.    The ALJ hearing

At the March 26, 2019, hearing, the ALJ heard testimony from Plaintiff and vocational expert Donald Rue.

#### i.    Plaintiff's testimony

Plaintiff is fifty-two years old, married with two children.  (R. 40–41.)  His injuries stem from arresting a perpetrator[1] and his last injury is from falling.  (R. 49.)  Plaintiff has difficulty getting dressed, especially reaching around to put a belt on and needs assistance, and he has difficulty bathing and has had to use a bench in the shower because he cannot stand for too long. (R. 41–42.)  Plaintiff drives for only short distances because it gets uncomfortable, cannot stay for the entire duration of a religious service, and has a difficult time going to watch his children's sports games.  (R. 42–43.)  He has trouble breathing, due to his exposure on 9/11 and it affects

---

[1]  The Medical Board opined that Plaintiff was disabled from an injury sustained while performing full duties.  (R. 378.)

his vocal cords and nasal passage.  (R. 44.)  Every few months he goes to Health Care Associates for pain to his hip and shoulder and has received cortisone injections to his hip.  (R. 44–5.)  The doctors at Health Care Associates have suggested a hip replacement.  (*Id.*)  In addition, Plaintiff got trigger point injections from Dr. Igor Stiller at least once per month for his shoulder back and neck for temporary reprieve.  (R. 45.)  Plaintiff also saw Dr. Kevin Weiner for pain management because he cannot take some types of pain medication as he suffers from Gastroesophageal reflux disease ("GERD.").  (R. 46.)  Dr. Weiner treats him with Duexis and trigger point injections.  (R. 46.)  Through the World Trade Center Fund, Plaintiff has seen Dr. Fred Lin at Mount Sinai for his sinuses.  (R. 45.)  Plaintiff cannot walk a full city block, and can only stand or sit for half an hour.  (R. 47.)  Plaintiff does not cook, shop for food, do laundry, or clean the house.  (R. 47–48.)  He mainly lies down during the day and sometimes his father comes to take him to visit his children at recess.  (R. 48).

### ii.  Vocational expert testimony

Vocational expert Donald Rue testified that Plaintiff's job as a police officer was a heavy level position with a specific vocational preparation of six, and his job as a police lieutenant was a light level position with a specific vocational preparation of eight.  (R. 51–52.)

The ALJ asked Rue to consider if Plaintiff could do his past work under the following conditions: Plaintiff could only engage in sedentary work, could not push or pull bilaterally, no foot control bilateral, could never climb ladders or scaffolds; he could never kneel or crawl and could occasionally climb ramps or stairs and stoop with no exposure to moving machinery, unprotected heights or driving vehicles; He could not be exposed to extreme temperatures, wetness, humidity and irritants; Plaintiff could not rapidly move his neck, and could never reach overhead with his right arm, but could frequently reach overhead with his left arm and could

frequently handle, finger, and feel, and Plaintiff would be off task 5% of the day due to pain.  (R. 52–53).  Rue testified that Plaintiff could not return to this past work but there were three positions in the national economy — document specialist, surveillance system monitor, and call out operator — all sedentary level positions with a specific vocational preparation of two that Plaintiff could perform with the stated limitations.  (R. 53–54.)

The ALJ added the limitations of occasional reaching and reaching in other directions for the right extremity, but Rue stated that such a limitation would not impact Plaintiff's ability to work at the three positions previously identified.  (R. 54.)  The ALJ changed the limitations of feeling, fingering, and handling from frequent to occasional, and Rue stated that Plaintiff could still work as a call out operator and in a security surveillance position but would not be able to work as a document specialist.  (R. 55.)  The ALJ changed the limitations to 20% off task due to pain instead of 5% and Rue stated that Plaintiff could not maintain employment with such a limitation.  (*Id*.)  In response to Plaintiff's counsel's questions regarding the duties of a callout operator, specifically whether they would have to use a computer and how much they would have to write information, Rue stated that the callout operator does not need to use a computer and would be writing approximately one third of the day and that the DOT listed the call out operator position as occasional for fingering, reaching and handling.  (R. 56–58.)  Plaintiff's attorney also asked Rue if the security system monitor job still existed in the labor market.  (R. 58.)  Rue testified in response that while the DOT was outdated there were still positions available in the national economy.  (R. 58.)

### iii.  Medical Board Police Pension Fund

The Medical Board opined that Plaintiff was disabled from an injury sustained while performing full duties.  (R. 378.)

### b.  The ALJ's decision

The ALJ conducted the five-step sequential analysis as required by the SSA.  (R. 12–22.) First, the ALJ found that Plaintiff had not engaged in substantial activity during the period from the alleged onset date of his disability, April 14, 2016, through the date on which Plaintiff last met the insured status requirement, December 31, 2021.  (R. 12.)  Second, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine and lumbar spine; right shoulder tear, status post arthroscopic surgery; degenerative joint disease of the right hip, status post-surgery; chronic sinusitis/rhinitis; GERD; obstructive sleep apnea; and obesity."  (R. 13.)

Third, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the impairments listed in Appendix 1 of the SSA Regulations, with specific consideration given to Listings 1.02 and 1.04.  (*Id.*)  The ALJ found that while Plaintiff did have a right hip impairment, Plaintiff did not meet the listing 1.02(A) — Major dysfunction of a weight bearing joint(s) — because there was no evidence that the impairment resulted in the inability to ambulate effectively.  (*Id.*)  The ALJ pointed to Plaintiff's statement to the consultative examiner Dr. Sujit Chakrabarti that he could walk four to six blocks on a good day and denied use of a cane.  (*Id.*)  The ALJ stated that Plaintiff also did not meet the Listing 1.02(B), Major dysfunction of a peripheral joint in the upper extremity, because there was no evidence of a gross anatomical deformity or an inability to perform fine and gross movements effectively.  (*Id.*)  The ALJ found that Plaintiff had a right shoulder impairment, but that Dr. Chakrabarti had found that Plaintiff had good grip strength as did Dr.

5

Stiller in his January 29, 2019 examination of Plaintiff.  (*Id.*)  The ALJ also pointed out that Plaintiff stated he could drive a car for a short distance.  (R. 13.)  The ALJ found that Plaintiff did not meet Listing 1.04, Disorder of the spine, because even though the medical records showed evidence of nerve root impingement, (R. 380), it was not met with associated sensory or reflex loss.  (R. 14, 348–49, 360.)  The ALJ found that Plaintiff's obesity might affect his ability to sustain activity but held it did not impact the ALJ's analysis of each of the criteria needed to meet any of the listed impairments considered.  (R. 14.)

Fourth, the ALJ determined "that, through the date last insured, [Plaintiff] had the residual functional capacity to perform sedentary work with the following exceptions:" limited to never pushing or pulling with the bilateral upper extremities, never operating foot controls bilaterally, no more than occasionally climbing ramps and stairs, never climbing ladders, ropes, or scaffolds; never balancing crouching, kneeling, or crawling, no more than occasionally stooping, never tolerating exposure to  moving machinery, unprotected heights, or driving vehicles, no rapid movement to the neck, avoiding  concentrated exposure to extreme heat or cold, wetness, humidity, irritants ( such as fumes, odors, dust, and gases), poorly ventilated areas and chemicals, also never reaching  overhead with the right dominant upper extremity, no more than occasionally reaching in all other direction with the right dominate upper extremity; and no more than frequently reaching overhead with the left non-dominant upper extremity, and will be off task 5% of the workday, in additional to regularly scheduled breaks."  (R. 14.)

In reaching this conclusion, the ALJ first reviewed the past work-related injuries that Plaintiff had sustained from 2003, 2005, and 2012.  (R. 15, 343, 360, 442.)  Then the ALJ reviewed the records from the injury Plaintiff sustained in January of 2015 which led to surgery on his right shoulder in March of 2015.  (R. 15, 360, 368–70, 372, 374).  The ALJ also noted that

6

in August of 2016, Plaintiff sustained a fall and subsequently complained of pain in the right shoulder, right hip, and back.  (R. 15, 443, 479.)  The ALJ reviewed: (1) the medical records from the physicians at Health Care Associates — Dr. Stiller, and Dr. Weiner — who were each treating Plaintiff from 2016 through 2019, (R. 343–44, 348–55, 436, 440–45, 447–80); (2)  the medical records from Mount Sinai Medical School and Dr. Lin regarding Plaintiff's chronic sinusitis and rhinitis, GERDS, and sleep apnea, (R. 304–41, 388, 391–410); (3) the consultative examination from Dr. Chakrabarti, the determination of the Medical Board of the Police Pension Fund, and the medical evaluation by Dr. Henry Urbaniak, (R. 378, 360–62, 497–505); (4) the MRI's conducted in December of 2016 that showed a disc bulge at C5-C6 indenting upon the ventral thecal sac and foramina abutting the bilateral exiting C6 nerve root, (R. 380), and the MRI from January of 2017, that showed a disc bulge at the L2-L3 indenting upon the ventral thecal sac, lateral recesses and foramina, (R. 356); and (5) the nerve conduction studies that were done in February of 2016 which showed that Plaintiff had Carpel Tunnel Syndrome in his right arm, (R. 348–49) and March of 2017 which showed S1 radiculopathy, (R. 383–84).  (R. 17.)

The ALJ assigned little weight to the three treating physicians, Dr, Stiller, Dr. Weiner, and the Health Care Associate physicians who are represented through Dr. Reilly.  (R. 18.) The ALJ noted that the three treating physicians offered similar opinions when it came to the Plaintiff's physical functioning.  (R. 18.)  All three indicated throughout their examinations that Plaintiff could not return to work.  (R. 344, 445, 452, 463, 465–66, 469, 473, 475).  All three stated that Plaintiff: could only stand/walk for less than one hour and sit for less than two hours; could only occasionally carry or lift between five to ten pounds; would need to lie down during the day; would require a sit/stand option; would require frequent breaks; would have difficulty concentrating because of the pain and pain medication; and would need two or more sick days

per month.  (R. 440–45, 447–52, 460–63.)  The ALJ noted that the three treating physicians did have a difference of opinion when it came to the functionality of Plaintiff's upper extremities. (R. 18.)  Dr. Stiller opined that Plaintiff could not use either upper extremity for any reaching, handling, fingering or feeling.  (R. 447.)  Dr. Weiner found that Plaintiff could occasionally use his right upper extremity for all reaching, handling, fingering, or feeling and could use his left upper extremity frequently for all functions.  (R. 460.)  Dr. Reilly stated that Plaintiff could use both upper extremities occasionally for all functions.  (R. 440.)  The ALJ acknowledges that the three physicians were treating physicians who were specialists in their fields.  (R. 18.)  However, the ALJ found that their opinions on Plaintiff's physical functionality provided "extreme limitations that were not supported by the objective medical evidence in the record."  (R. 18.) The ALJ noted specifically: (1) Dr. Stiller's January 29, 2019 examination where he found Plaintiff to be "neurologically intact apart from a slight decrease in hand grip strength, with a normal sensory examination and normal reflexes, (R. 453–54); (2) Dr. Weiner's recommendation on May 1, 2018 that Plaintiff could return to gym for light exercises and non-impact cardio, (R. 467); (3) the February 5, 2019, examination at Health Care Associates by Dr. Alexander Tejani that showed good range of motion in Plaintiff's hip and minimal pain upon impingement, (R. 476); and (4) the consultative examination conducted by Dr. Chakrabarti, where the Plaintiff stated that he could walk four to six blocks and carry up to ten pounds, (R. 361).  (R. 18.)

The ALJ also gave the Medical Board Police Pension Fund examination little weight because the Board did not provide a detailed explanation of Plaintiff's work-related functionality and while it concluded that Plaintiff was approved for Accident Disability Retirement, the determination of disability is reserved for the Commissioner.  (R. 18–19.)

The ALJ assigned substantial weight to the opinion of the medical examiner Dr. Urbaniak

who reviewed the records but did not examine Plaintiff. (R. 19, 497.) The ALJ stated that Dr. Urbaniak summarized the most pertinent findings and acknowledged that they did not fully corroborate Plaintiff's severe symptoms. (R. 19.)

At step five, the ALJ determined that Plaintiff could not perform his past relevant work as a police officer or police lieutenant. (R. 20.) However, the ALJ determined that Plaintiff was considered a younger individual with at least a high school degree who speaks English. Therefore, using the Medical Vocational Rules, the ALJ determined that Plaintiff was "not disabled." (*Id*.) The ALJ also considered Plaintiff's residual functional capacity, age, education, and work experience, in addition to the Medical-Vocational Guidelines. (R. 20 (citing 20 § CFR 404(p)).) Thus, the ALJ took into consideration additional limitations Plaintiff might have in order to perform sedentary work. (R. 20–21.) The ALJ relied on the testimony of VE Rue, (R. 50–59), and determined that there were jobs that existed in the national economy, such as Surveillance System Monitor and Call out Operator that Plaintiff could perform. (R. 21.)

## II.  Discussion

### a.  Standard of review

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005); *see also Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)); *see also Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (same); *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (same). Once an ALJ finds facts, the court

9

"can reject those facts only if a reasonable factfinder would have to conclude otherwise."

*Talyosef v. Saul*, 848 F. App'x 47, 48 (2d Cir. 2021) (quoting *Brault v. Soc. Sec. Admin.*, 683

F.3d 443, 448 (2d Cir. 2012)).  In deciding whether substantial evidence exists, the court

"defer[s] to the Commissioner's resolution of conflicting evidence."  *Smith v. Berryhill*, 740 F.

App'x 721, 726 (2d Cir. 2018) (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir.

2012)).  If, however, the Commissioner's decision is not supported by substantial evidence or is

based on legal error, a court may set aside the Commissioner's decision.  *See Ewen v. Saul*, No.

19-CV-9394, 2021 WL 1143288, at *11 (S.D.N.Y. Mar. 23, 2021) (citing *Moran*, 569 F.3d at

112); *see also Prince v. Astrue*, 514 F. App'x 18, 19–20 (2d Cir. 2013) (citing *Burgess v. Astrue*,

537 F.3d 117, 128 (2d Cir. 2008)).  "In making such determinations, courts should be mindful

that '[t]he Social Security Act is a remedial statute which must be 'liberally applied'; its intent is

inclusion rather than exclusion.'"  *McCall v. Astrue*, No. 05-CV-2042, 2008 WL 5378121, at *8

(S.D.N.Y. Dec. 23, 2008) (alteration in original) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 723

(2d Cir. 1983)).

### b.   The ALJ did not properly weigh the opinion evidence because it inappropriately applied the treating physician rule

Plaintiff moves for judgment on the pleadings, arguing that the ALJ improperly weighed

the evidence by improperly applying the treating physician rule and Social Security Regulations

and by not giving the opinions of the treating physicians — Dr. Stiller, Dr. Weiner, and Dr.

Reilly — greater evidentiary weight[2] and affording the opinion of non-examining medical

---

[2] On January 18, 2017, the Social Security Administration published a final rule that changed the protocol for evaluating medical opinion evidence.  *See* Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404, 416).  The "new regulations apply only to claims filed on or after March 27, 2017."  *Smith v. Comm'r*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018).  Because Plaintiff's claim was filed prior to that date, the Court refers to versions of the regulations that were in

examiner Dr. Urbaniak significant weight.  (Pl.'s Mem. 13.)  Plaintiff argues that if the ALJ had

properly weighed the medical evidence, he would have awarded benefits to Plaintiff because he

meets or equals a Listing and is therefore disabled.  (*Id.* at 20.)  Plaintiff also argues that the ALJ

erred in assessing Plaintiff's credibility.  (*Id.* at 22.)

The Commissioner argues that the ALJ's determination that Plaintiff was not disabled is

supported by substantial evidence and free of legal error.  (Comm'r Mem. 12.)  In support, the

Commissioner argues that Plaintiff does not meet or equal any Listing and that the ALJ properly

weighed the medical opinion evidence and sufficiently explained his reasoning and therefore did

not err in his determination.  (*Id.* at 14–18, 20.)

"[A] treating physician's statement that the claimant is disabled cannot itself be

determinative."  *Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) (quoting *Snell v. Apfel*,

177 F.3d 128, 133 (2d Cir. 1999)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)

(same).  However, an ALJ "must follow" specific procedures "in determining the appropriate

weight to assign a treating physician's opinion."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

2019); *see also Ferraro v. Saul*, 806 F. App'x 13, 14 (2d Cir. 2020) (holding that "[u]nder

Second Circuit precedent and the applicable regulations," the ALJ must follow the two-step

procedure to determine the appropriate weight to assign to the opinion of a treating physician

laid out in *Estrella*).  "First, the ALJ must decide whether the opinion is entitled to controlling

weight."  *Estrella*, 925 F.3d at 95.  "The opinion of a claimant's treating physician as to the

nature and severity of an impairment is given 'controlling weight' so long as it 'is well-supported

---

effect prior to March 27, 2017.  *See White v. Berryhill*, No. 17-CV-4524, 2018 WL 4783974, at
*4 n.4 (E.D.N.Y. Sept. 30, 2018) ("While the Act was amended effective March 27, 2017, the
[c]ourt reviews the ALJ's decision under the earlier regulations because the [p]laintiff's
application was filed before the new regulations went into effect." (citation omitted)).

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2))) (alterations omitted); *see also Lesterhuis*, 805 F.3d at 88 (discussing the treating physician rule); *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient." (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2 (2d Cir. 1983) (per curiam))).

"Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Estrella*, 925 F.3d at 95.  In deciding how much weight to assign to the opinion, the ALJ must "explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Id.* at 95–96 (quoting *Selian*, 708 F.3d at 418) (internal quotation marks omitted); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)) (discussing the factors).  "At both steps, the ALJ must give good reasons . . . for the weight it gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32) (alterations and internal quotation marks omitted).  "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error."  *Id.* (quoting *Selian*, 708 F.3d at 419–20).  "If the Commissioner has not otherwise provided good reasons for its weight assignment," the district court is unable to conclude that the procedural error is harmless, and remand is therefore appropriate, so that the ALJ can "comprehensively set forth its reasons."  *Id.* (alterations,

citation, and internal quotation marks omitted); *see also Sanders v. Comm'r*, 506 F. App'x 74, 77 (2d Cir. 2012) (noting that failure "to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"); *Halloran*, 362 F.3d at 32–33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion."). However, if a "searching review of the record . . . assures [the court] that . . . the substance of the . . . [treating physician] rule was not traversed *i.e.* whether the record otherwise provides good reasons for assigning little weight to[an] opinion," the court will affirm. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32) (internal quotation marks omitted).

The ALJ erred in giving little weight to the treating physicians Dr. Stiller, Dr. Weiner, and Dr. Reilly of Health Care Associates because he failed to properly apply both the first and second steps of the treating physician rule.

### i. The ALJ did not give good reasons for not assigning controlling weight to the opinions to the three treating physicians

Dr. Stiller, Dr. Weiner and Dr. Reilly's opinions were all entitled to controlling weight because they are all supported by clinical and laboratory diagnostic techniques and are consistent with one another and the other substantial evidence in the record. *Estrella,* 925 F.3d at 96 (noting that a treating physician is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).

The ALJ opined that these three treating physicians' opinions contained extreme limitations not supported by the objective medical evidence on the record, and also opined that they are inconsistent because they provide "drastically different opinions" as to Plaintiff's manipulative functioning and the use of his bilateral upper extremities. (R. 18.)

The opinions of all three treating physicians were consistent with one another and the other substantial evidence in the record. All three treating physicians saw decreased muscle strength, limited range of motion and pain in the right shoulder, (R. 343, 351–55, 443–44, 453–57, 462, 468, 470–71, 474, 479–80), pain and limited range of motion in the lumbar spine, (R. 354, 444, 453–59, 462, 463, 468, 470–71, 476), pain with range of motion in the right hip. (R. 343, 351–55, 444, 462, 469, 475), and pain and limited rotation in the left shoulder, (R. 348–49, 444, 462, 475). Drs. Weiner and Stiller also observed limited range of motion in the cervical spine. (R. 343, 351–55, 453–59, 462, 468, 470–71.) These observations were all supported by clinical and laboratory diagnostic techniques. An MRI of the cervical spine was conducted in December of 2016, which showed right foraminal disc herniation at disc bulge at C5-C6 indenting upon the ventral thecal sac and formina abutting the bilateral existing C6 nerve roots. (R. 380.) An MRI of the lumbar spine was conducted in January of 2017, showed disc bulge at L2-L3 and posterior spondylosis indenting on the ventral thecal sac, lateral recess and foramina with facet arthropathy. (R.356.) Dr. Stiller also performed a nerve conduction study on February 10, 2017, which showed prolonged distal latency in the right median motor nerve consistent with carpel tunnel syndrome. (R. 348–49.) Dr. Stiller also observed a greater than 20% difference between the proximal and distal amplitude of the left ulnar motor nerve which is consistent with axonal loss or weakness. (R. 348–49.) Another nerve conduction study was done on March 31, 2017, on Plaintiff's lumbar spine which revealed a right S1 radiculopathy indicating nerve root compression. (R. 383–84.) An x-ray was taken on April 3, 2018, which showed mild joint narrowing. (R. 444.)

In addition, these observations and clinical tests were consistent with the opinion of the consultative examiner Dr. Chakrabarti, who observed a restricted range of motion in the right

shoulder, limited range of motion and pain in the right rip, and the lumbar spine.  (R. 360–62.)  A radiology report done the same day also showed mild spondylosis in the lumbosacral spine.  (R. 363.)  The Medical Board of the Police Pension Fund examination also showed a limited range of motion, as well as pain and muscle weakness in the right shoulder and bicep muscle.  (R. 378.)

All three treating physician's opined that Plaintiff could stand or walk for less than an hour during an eight-hour workday, sit for less than two hours in an eight-hour workday, would need to lie down during the workday, would require a sit/stand option, would require frequent breaks, would need to at least two days off a month for sick days, and would have difficulty concentrating due to pain.  (R. 440–41, 449–52, 460–61.)  The ALJ correctly noted that the three physicians provided different opinions as to Plaintiff's use of his upper extremities and manipulative functioning.  (R. 18.)  Dr. Reilly related that Plaintiff could lift/carry between five to ten pounds for a third to two-thirds of an eight-hour workday, could occasionally use his left upper extremity for reaching overhead, forward and laterally, could never use his right upper extremity to reach overhead or laterally and only occasionally reach forward and handle finder and feel.  (R. 440–41.)  Dr. Stiller opined that Plaintiff could not lift/carry more than ten pounds, he could not reach overhead, forward or laterally with either upper extremity or use his hands.  (R. 449–52.)  Dr. Weiner opined Plaintiff could not lift/carry more than five pounds for a total of a third to two-thirds of an eight-hour workday, could use his left upper extremity frequently, and right upper extremity occasionally for reaching overhead forward and laterally and to handle finger and feel.  (R. 460–61.)  While there is some discrepancy in these portions of the opinions, they do not contradict one another because all three note that there are limitations in both upper extremities and with manipulative functioning.  *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002) (holding that a treating physician's opinion "need not be given controlling weight"

when it is "contradicted by other substantial evidence in the record").  Each physician provides a varying degree of functionality, but the discrepancies in their opinions is supported by the evidence each physician used to make their determinations.   Dr. Stiller determined both Plaintiff's upper extremities had significant functional limitations based upon the nerve conduction studies he performed which showed Plaintiff had carpal tunnel syndrome as well an axonal loss in the left upper extremity.  Both Dr. Reilly and Dr. Weiner did not conduct any such tests and only observed pain and restrictions in the left upper extremity which would indicate why their opinions as to functional limitations were less than Dr. Stiller's opinion.  The ALJ found Dr. Weiner's recommendations of light exercise and non-impact cardio and swimming to be inconsistent with the extreme limitations as to his functionality.  (R. 18, 467.)  However, Dr. Weiner indicated in his March 12, 2019 examination that he recommended the light exercise when Plaintiff was feeling very lethargic in order to help build back some strength and recommended swimming to help alleviate some of Plaintiff's pain.  (R. 462–63.)  This is not contradictory with his opinion but rather in keeping with his observations and medical opinion that Plaintiff had lost muscle strength and was in pain.

While an ALJ does not have to afford controlling weight to a treating physician if it is inconsistent with the record as a whole, *Estrella*, 925 F.3d at 95, the ALJ cannot cherry pick portions of each of the treating physicians 'opinions and medical evidence as inconsistent as these inconsistencies can be readily explained by proper review of the medical evidence and opinions.  *See Jacobs*, 482 F. Supp. 3d 27.  The alleged inconsistencies the ALJ raises do not support disregarding the treating physician rule.  *See Gallishaw v. Comm'r*, 296 F. Supp. 3d 484, 496 (E.D.N.Y. 2017) (quoting *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000)).  The ALJ relies on minor inconsistencies between the doctors' opinions and highlights these

16

inconsistencies while ignoring the fact that the evidence that suggests disability and the majority of the opinions are consistent with one another. Thus, the ALJ did not provide a good reason for assigning little weight to the treating physicians' opinions. *Daniels v. Berryhill,* 270 F. Supp. 3d 764, 773 (S.D.N.Y. 2017) (citing *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015)). The ALJ erred in his analysis of the treating physicians as there is no indication in the record that the opinions of the three treating physicians were "unsupported" by medical evidence or "inconsistent" with the record as a whole. *Estrella,* 925 F.3d at 95, 98; *see, e.g.*, *Kennedy v. Comm'r*, No. 19-CV-01740, 2021 WL 848784, at *8 (E.D.N.Y. Mar. 5, 2021) (finding that the ALJ erred in not giving the treating physician controlling weight when the opinion was well supported and not contradicted by other substantial medical evidence).

### ii.   The ALJ did not properly apply the *Burgess* factors

The ALJ further failed in his application of the treating physician rule by not properly applying the *Burgess* factors. *See Estrella*, 925 F.3d at 95–96 (requiring the application of *Burgess* factors if the ALJ does not assign controlling weight to the treating physician). Failure to apply these "*Burgess* factors" is procedural error. *See Selian*, 708 F.3d at 418.

Although the ALJ did touch on the length of treatment each of the treating physicians had provided Plaintiff and acknowledged that each physician is a specialist in their relevant fields, (R. 18), as discussed above, the ALJ failed to consider the second and third *Burgess* factors, i.e., the amount of medical evidence supporting the opinions and the consistency of the opinions with the remaining medical evidence. *Estrella,* 925 F.3d at 95–96, 98 ("In light of the ALJ's failure to 'explicitly consider' the first *Burgess* factor before assigning 'little weight' to the opinion of [plaintiff's] treating psychiatrist, and the lack of other 'good reasons' to support that decision, we conclude that the ALJ traversed the substance of the treating physician rule."). The ALJ

17

dismissed the significant amount of medical evidence that supported each of the opinions including multiple clinical examinations that each physician conducted and the multiple diagnostic tests, such as MRIs and nerve conduction studies that supported their opinions. *See e.g.*, *Duncan v. Saul*, No. 17-CV-573, 2019 WL 3219287, at *4 (W.D.N.Y. July 17, 2019) (remanding the case to the Commissioner because the ALJ failed to consider the second *Burgess* factor only providing conclusory observations that the treating physician opinions were generally inconsistent with the record).  In addition, each of the treating physicians' opinion was consistent with one another except as to Plaintiff's left upper extremity.  The ALJ refers to this one minor inconsistency as the reason for assigning the three treating physicians' opinions little weight, while completely ignoring the almost completely consistent opinions as to all other areas. *See Nieves v. Acting Comm'r of Soc. Sec.*, No. 20-CV-4179, 2022 WL 949797, at *14 (S.D.N.Y. Mar. 30, 2022) ("[T]he failure to 'give any weight to the fact that [certain physicians'] opinions are consistent with other medical evidence in the record because *they are consistent with one another*' constitutes legal error, remand is warranted on this basis as well." (quoting *Denver v. Berryhill*, No. 19-CV-1312, 2020 WL 2832752, at *2 (S.D.N.Y. Jun. 1, 2020))).

While it is not necessary that the ALJ recite each factor explicitly, the ALJ's determination must reflect the application of the substance of the treating physician rule. *Halloran*, 362 F.3d at 32.  The ALJ's failure to consider the extent of the medical evidence supporting the opinions and the consistency of the opinions with each other and the remaining medical evidence demonstrates that the substance of the treating physical rule was traversed and remand is appropriate. *Id*.

The ALJ's error in failing to give the treating physicians opinions controlling weight, failing to provide a good reason for not giving controlling weight, and failing to properly apply the *Burgess* factors requires remand for proper application of the treating physician rule.

### c.   The ALJ failed to consider all of Plaintiff's functional limitations

By assigning little weight to the treating physicians' opinions, the ALJ did not take their opinions as to Plaintiff's functionality into consideration in posing hypotheticals to VE Rue in determining whether Plaintiff is capable of performing other jobs existing in the significant numbers in the national economy.  20 C.F.R. § 404.1569.  The ALJ did not pose any additional restrictions that all three of the treating physicians indicated Plaintiff would need, such as, Plaintiff's need to lie down for most of the day, his need for a sit-stand option, or the need to take two or more sick days per month. (R. 51–57.)  *See Sczepanski*, 946 F.3d at 159 (where the plaintiff's need to miss one day of work per month was a key limitation).

When the ALJ relies on a vocational expert's testimony to satisfy the burden, "a hypothetical question that does not present the full extent of claimant's impairments cannot provide a sound basis for vocational expert testimony."  *Goulbourne v. Saul*, No. 18-CV-2377, 2020 WL 3960504, at *6 (E.D.N.Y. July 13, 2020) (quoting *Gray v. Astrue*, No. 06-CV-0456, 2009 WL 790942, at *14 (N.D.N.Y. Mar. 20, 2009)); *see also Melligan v. Chater*, No. 94-CV-944S, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996) ("In order to rely on a vocational expert's opinion: the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments." (internal quotation marks omitted)).  The Commissioner argues that because the ALJ afforded the treating physicians' opinions little weight, those limitations did not need to be considered.  (Comm'r Mem. 24.)  However, because the ALJ erred in not affording the treating physicians' opinion controlling weight, the ALJ erred by failing to include those necessary

limitations when questioning the vocational expert.  Given that the ALJ failed to consider all of Plaintiff's functional limitations, the determination that there are jobs in the national economy that Plaintiff is capable of performing is not supported by substantial evidence and remand to further develop the record is appropriate.[3]  *See Goulbourne*, 2020 WL 3960504, at *7.

## III. Conclusion

For the foregoing reasons, the Court denies the Commissioner's motion for judgment on the pleadings and grants Plaintiff's cross-motion for judgment on the pleadings.  The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).  The Clerk of Court is directed to close this case.

Dated: March 30, 2023
       Brooklyn, New York

                                        SO ORDERED:


                                        _____ s/ MKB _____
                                        MARGO K. BRODIE
                                        United States District Judge

---

[3]  Because the Court remands this case for the reasons set forth above, the Court declines to address Plaintiff's remaining arguments that his impairments meet or equal a listing or that the ALJ improperly assessed Plaintiff's credibility.  (Pl.'s Mem. 20–22.)  *See, e.g., Alvarez v. Comm'r*, No. 14-CV-03542, 2015 WL 5657389, at *19 (E.D.N.Y. Sept. 23, 2015).